OCTOBER TERM, 1908.

## BLYTH & FARGO COMPANY ET AL. v. KASTOR.

BANKRUPTCY—PREFERENCE—ACTION TO RECOVER—INSTRUCTIONS—EVIDENCE—INSOLVENCY.

1. To constitute a preference within the meaning of the U. S. Bankruptcy Act of 1898, a mere intent to prefer is not alone sufficient, but the act complained of must have amounted in fact to a preference as defined in that act, the test being whether it occurred when the debtor was insolvent and within the four month period, and the effect of its enforcement is to give any creditor a greater percentage of his debt than any other creditor of the same class.

2. Though an intent to prefer actually present in the mind of the debtor does not seem essential to constitute a preference in fact as defined in sub-division "a" of Section 60 of the Bankruptcy Act, it must appear, to make the preference voidable by the trustee, and to authorize his recovery of the property or its value, that the creditor had reasonable cause to believe that a preference was intended by the act complained of, and, therefore, the intent of the debtor becomes material in the trustee's suit to recover a preference.

3. In the suit of a trustee in bankruptcy to recover a preference, the intent to prefer may be inferred from the nature and effect of the debtor's act, under the rule that a party is supposed to have intended the natural and obvious consequences of his act.

4. An instruction in such a suit seeming to declare that the transfer claimed to have been a preference would be invalidated if made alone with an intent to create a preference, ignoring the necessity of a preference in fact, in connection with another instruction giving prominence to the intent rather than the fact of preference in stating the proof required, tended to confuse and mislead the jury, and might, therefore, be held not only technically erroneous, but prejudicial as well.

5. An instruction that upon the conditions prescribed by the Bankruptcy Act, a transfer sought to be avoided as a preference would be "fraudulent and void," would not necessarily be prejudicial in the absence of evidence of

actual fraud, since, if the transfer amounted to a prefer-
ence, it would be constructively fraudulent as a violation
of the act, and hence voidable at the suit of the trustee;
and, therefore, the terms employed in the instruction could
not lead to a different verdict than if the effect had been
described with technical exactness.

6. In a trustee's suit to recover a preference from the party
alleged to have received the same, an instruction is not
erroneous in principle which states that if the defendant
knew of such circumstances as would ordinarily produce
a belief in the mind of a careful and prudent man that a
preference was intended by the transfer, then the jury
would be justified in finding that the defendant had rea-
sonable cause to believe that a preference was intended;
and it was not objectionable as presupposing the fact of in-
solvency to have been established, since it was confined to
a statement of a rule for determining whether there was
reasonable cause for belief by the defendant that a pre-
ference was intended.

7. Testimony in the deposition of the debtor taken before the
trial stating the names of certain parties to whom he had
been indebted and the respective amounts owing to them,
was not inadmissible, because the date of such indebtedness
was not given, but the sufficiency of the evidence was for
the jury.

8. Upon the question of the debtor's insolvency at the time of
a transfer alleged to have constituted a preference under the
Bankruptcy Act, the debtor, upon his direct examination
as a witness for plaintiff was permitted over objection to
answer the question: "You knew at the time, did you
not, that you hadn't money enough to pay your bills?"
*Held* improper, since it tended to confuse the jury as to
what constituted insolvency, the question being close upon
the facts.

9. It was not error to admit the testimony of the debtor
and his wife, claimed to have been his partner, that
they knew they were insolvent when the transfer was
made, for it was relevant upon the question of intent in
making the transfer, but it would be proper by an instruc-
tion to restrict its effect before the jury to the limited
purpose for which it was material.

10. Though another mortgage to the same party given by the
debtor at the same time to secure the same debt was not
in controversy, the fact that it was so given was ad-
missible as a circumstance to show the knowledge or be-

lief of the defendant concerning the purpose or intent of the transfer complained of.

11. It was improper to admit testimony of one of the alleged debtors that she had conversations with the other, her husband, from which she concluded that they were insolvent, and that she told her husband that they had more debts than they could pay, since it went beyond a mere statement of belief of insolvency, and was inadmissible to show the fact of insolvency.

12. The evidence showing that in the conversation preceding the giving of the chattel mortgage complained of, the representatives of the creditor informed the debtor that they had come for the money on the account, and that, if the same was not settled or secured, they would take the goods by some legal proceeeding, and it not appearing that the goods previously sold and delivered were taken back, or that any attempt was made to do so, or to separate them from the other goods in the debtor's stock, or even to ascertain whether any of the goods represented by the account were then on hand; *Held*, that the defendant was not entitled to have instructions given upon the theory of a present consideration for the mortgage through a rescision of the sale of the goods and a new agreement made permitting the debtor to retain the goods upon giving the notes and mortgage.

13. The evidence showing that the debts of the bankrupt at the time of the alleged preference did not exceed $2,515.35, while the aggregate value of his property at that time was $2,775; *Held,* that the debtor was not insolvent within the definition of "insolvency" found in the Bankruptcy Act.

[Decided November 9, 1908.]    (97 Pac. 921.)

ERROR to the District Court, Uinta County; HON. DAVID H. CRAIG, Judge.

The material facts are stated in the opinion.

*P. W. Spaulding* and *Maginnis & Corn,* for plaintiffs in error.

The court erred in not instructing a verdict for defendants, the evidence failing to show insolvency of the debtor when the mortgage was given. Exemptions are not to be

considered in estimating the value of the debtor's property. (Collier on Bankruptcy, 6th Ed., 5; *In re* Hines, 144 Fed. 142.) The burden of proving insolvency was on the plaintiff. (Collier, 476; *In re* Chappell, 113 Fed. 545.)

It was also incumbent on the plaintiff, to show that the defendant "had reasonable cause to believe that it was intended thereby to give a preference." There was not, and could not be any evidence tending to prove this fact upon the close of the plaintiff's testimony, for the debtor, John Gourley, is the only witness who had testified upon that subject and he gives figures showing that while his indebtedness, or that of Gourley & Co. was about $2,200, the value of his property was more than $2,900. (Butler Paper Company v. Goembel, 143 Fed. 295.) It does not conflict with this view that the evidence of the trustee Kastor, shows that the estate realized nothing, or a very small amount, for the testimony of Gourley shows that he proceeded to pay other creditors out of the assets, the amounts being indefinite, and Kastor, by his own testimony, made no effort to collect the estate, took no steps towards appraising the same and did nothing but receive the books and go over them. The fact that the estate was wasted subsequent to the alleged preference argues nothing as to the value of the estate or the means of knowledge of the defendants at that time.

In order to constitute a preference three things must concur: The debtor must have been insolvent at the time, he must have made transfer to a creditor, and the effect of such transfer must have been such as to enable the creditor to obtain a greater percentage of his claim than any other creditor of the same class, and such preference must have been made within four months of the bankruptcy. (Bankruptcy Act, Sec. 60 (a).) The intention of the debtor does not enter into the question whether there was in fact a preference, but there must in fact have been a preference before the intention of the bankrupt or the creditor's knowledge of it would become important or relevant.

The trial court erred in denying defendant's requests for instructions 1 and 2 because there was evidence to the effect that the taking back of the goods sold was contemplated and that the bankrupt was permitted to retain the goods on the giving of the chattel mortgage in question, a present consideration therefor being the retaining of the goods by debtor.

The court improperly admitted the testimony of Gourley as to his debts, without any date when they were owing being given, and also his testimony and that of his wife that they knew they were insolvent when the mortgage was made. The fact that the debtor did not have sufficient money to pay his bills was immaterial; that is not the test of insolvency under the Bankruptcy Act.

*T. S. Taliaferro, Jr., W. B. Dunton,* and *Mathoniah Thomas,* for defendant in error.

The deposition of J. R. Gourley shows him to have been insolvent at the time of the mortgage. His assets amounted to $2,200, and his debts were $3,046.37. The salient facts in this case are: That on June 17th, 1903, the plaintiffs in error took a mortgage upon the property of the bankrupts to secure a debt of $942.13. Subsequently they sold the property for about the amount of their debt under the terms of the mortgage. There are no other assets to be realized upon by creditors to whom the firm owes over $1,672.79. Did then the giving of the mortgage by the bankrupts and the acceptance of the same by the plaintiffs in error and the subsequent forcible taking over of the property create a preference?

The jury had the statement of the witness, Gourley, to the effect that he fully related his liabilities; they had the evidence of the witnesses for the defense. No evidence was submitted but what tended to prove the insolvency of this firm. The question was one solely for the jury; and in matters of this sort the jury are the judges of the fact, and if there be any evidence upon which the verdict can be sustained, this court will not interfere with nor reverse

that verdict.   The concluding words of Instruction 10 "fraudulent" and "void" might have been better expressed by the words "unlawful" and "voidable," but the words "fraudulent" and "void" as used in the instruction could not prejudice the plaintiffs in error in any manner.

Leaving out all other considerations the court did not err in its refusal to instruct the jury at the request of the plaintiffs in error as sought by Instructions Nos. 1 and 2, for the reason that upon the face of these instructions they do not meet the issues in this case which was not to set aside or cancel the mortgage.

The testimony of Mrs. Gourley as to her conclusion from conversations with her husband upon the question of their insolvency was competent, for a witness who states the facts upon which his opinion is based, and his means of knowledge, may state his opinion.   The date of the indebtedness testified to by Gourley was well shown by the evidence.

POTTER, CHIEF JUSTICE.

This is an action by Isador Kastor, as trustee in bankruptcy of the estate of J. R. Gourley & Co., bankrupts, to recover a preference alleged to have been received by a creditor, the Blyth and Fargo Company, a corporation, within four months before the filing of the petition in bankruptcy.   The suit was brought against the Blyth and Fargo Company and Thomas Blyth.   The averments of the petition are substantially as follows:   That on the 17th day of June, 1903, J. R. Gourley & Co., a partnership composed of John R. Gourley and Eleanor Gourley, being then insolvent and indebted to the Blyth and Fargo Company in the sum of $942.13, and the owner and in possession of a stock of dry goods and groceries and store fixtures, transferred said property to the Blyth & Fargo Co., by a chattel mortgage to Thomas Blyth, the manager of said company, for no other consideration than said pre-existing indebtedness, which was otherwise unsecured, whereby said company was enabled to and did obtain a

greater percentage of its debt due it from said J. R. Gourley & Co. than was or could have been received by any other creditor standing in the same class. That the transfer was made for the benefit of the said Blyth & Fargo Co., with the intent to give it a preference, and with the intent to hinder, delay and defraud the creditors of J. R. Gourley & Co. That at the time of receiving said chattel mortgage, and the transfer of said property by virtue thereof, each and both of the defendants had reasonable cause to believe that the debtors were insolvent and that a preference was intended, and that the transfer was received with the intent and purpose of carrying out said preference, and with the intent to hinder, delay and defraud the other creditors of said J. R. Gourley & Co. of the same class. That a petition in bankruptcy presented by certain creditors of J. R. Gourley & Co. was filed August 3, 1903, in the United States District Court for the District of Wyoming, upon which petition said J. R. Gourley & Co. was, by an order of said court entered August 18, 1903, adjudged bankrupt; and thereafter the plaintiff was duly appointed and became the duly qualified trustee. That after the adjudication of bankruptcy the defendants sold the said property for $1,600, whereby the same has passed beyond the control of the defendants, and they have converted the proceeds to their own use, "particularly to the use and benefit of the said Blyth & Fargo Company." It is then alleged "that plaintiff hereby adopts said sale and alleges that the said defendants received the said sum of $1,600 on or about the 10th day of August, 1903, for the use of the plaintiff."

Although the chattel mortgage referred to in the petition and charged to have constituted a preference was made to Thomas Blyth to secure, according to its terms, the payment of two promissory notes of even date with the mortgage for $500 and $442.13, due July 1, and October 1, 1903, respectively, payable to Thomas Blyth, the evidence shows, and the fact is conceded, that the notes represented the amount of the pre-existing debt due the Blyth & Fargo

Company, and that the mortgage was executed and de-
livered as aforesaid for its benefit.   It was, however,
claimed on the trial and is here contended that the debt,
which was for goods sold and delivered upon a stated
time of credit, some of which at least was past due, had been
fraudulently incurred through the representation of John
R. Gourley, afterwards discovered to be false, that he
was doing only a cash business, and that the mortgage was
executed in consideration of an extension of time for the
payment of the account, and permission to the debtor to
retain the goods claimed to have been fraudulently ob-
tained.

The subsequent sale of the mortgaged property by or
for the benefit of the Blyth & Fargo Company is conceded,
but upon the evidence it appears that the gross proceeds
of the sale did not exceed the sum of $980, and the testi-
mony on behalf of defendants tended to show that the
net proceeds did not exceed $860.   It further appears
from the evidence that the sale was had and completed not
only before the adjudication of bankruptcy, but before the
filing of the petition in bankrupcty, taking the allegation
of the petition in this case as correctly stating the date of
the bankruptcy proceedings.   Since there is no contention
respecting the date of filing the petition in bankruptcy or
of adjudication, and the brief of plaintiffs in error, de-
fendants below, concedes the date of adjudication as alleged
in the petition, we are led to suppose that it was either
admitted on the trial or tacitly understood that the dates
of the bankruptcy proceedings were correctly alleged, but
the record is silent concerning any proof or admission as
to those proceedings.

It appears from the evidence, that on July 3, 1903, the
note due July 1 not having been paid, the Blyth & Fargo
Company, or Thomas Blyth for its benefit, took posses-
sion under the mortgage of the mortgaged property and
proceeded to sell the same, and that the sale was com-
pleted within the succeeding twenty-five days; there is
therefore no ground for dispute upon the evidence, nor is

it disputed, that the sale antedated the filing of the petition in bankruptcy, if the fact is to be regarded as in anyway material.

The case was tried to a jury, and a general verdict was returned for the plaintiff for $928, with interest at eight per cent from August 1, 1903, the jury having been instructed that plaintiff's damages in case of his recovery would be the amount, if any, derived from the sale of the property, together with interest at the rate of eight per cent from the date of said sale. A special finding was also returned that the fair value of the mortgaged property at the date of the mortgage was $1,500. The record discloses no request or direction for such finding, but it seems probable that with other forms of verdict, a prepared form for the special finding with a blank space for the amount found to be the value was submitted to the jury.

Judgment was entered upon the general verdict against both defendants, and they bring the case here by a joint petition in error, praying a reversal of the judgment.

The following grounds for reversal are relied on. (1) That the court erred in denying the motion of defendants below at the conclusion of plaintiff's case to instruct a verdict in favor of defendants, for the insufficiency of plaintiff's evidence to show the insolvency of the debtor at the date of the alleged preference, and that either of the defendants, their agent or agents, had reasonable cause to believe that a preference was intended; and generally that the evidence as to those matters is insufficient to sustain the verdict. (2) That the court erred in giving certain instructions requested by the plaintiff. (3) That the court erred in refusing certain instructions requested by the defendants. (4) That certain evidence offered by the plaintiff was improperly admitted over the objection of defendants.

Before considering the questions thus presented, it should be said that we do not understand this to be a case for the cancellation of the mortgage in controversy, or for its avoidance upon any ground other than that it constituted a voidable preference. Although there is an averment that

the transfer was made with the intent to hinder, delay
and defraud creditors, its relation to other averments is
such as to clearly indicate that it was not intended to go
further than to charge a fraudulent because voidable prefer-
ence within the operation and meaning of the Bankrupt
Act.    Indeed, there does not appear to have been a con-
trary contention on the trial, nor is there such contention
here.    Under the instructions, the only matter submitted
to the jury for determination in arriving at a verdict was
whether the transaction amounted to a preference voidable
at the suit of the trustee.

In the first instruction requested by the plaintiff it was
stated in substance that the burden rested upon the plaintiff
to prove by a preponderance of the evidence that the trans-
fer of the property in question was made by J. R. Gourley
& Co. within four months before the filing of the petition
in bankruptcy, that it was made for the benefit of the Blyth
and Fargo Company with the intention of giving to it or
either defendant a prefrence, that such intention was known
to the defendants, or that they, or either of them, had,
at the time thereof, a reasonable cause to believe that such
preference was intended, and that the effect of the trans-
fer was to give the defendants, or either of them, such a
preference.    In the second instruction a preference, in re-
lation to the acts complained of in this case, was defined
according to the definition of that term in section 60a of
the Bankrupt Act.    The third intsruction correctly defined
insolvency within the meaning of the Bankrupt Act.    In
the fourth and fifth instructions the jury was informed
that if it should be found that a preference had been given
to the defendant, within the four months period, substan-
tially as alleged in the petition, and that the person receiv-
ing it or to be benefited thereby, or his or its agent act-
ing therein, had reasonable cause to believe that a preference
was intended, then the trustee could recover the value of
the property transferred in giving such preference, which
value in this case would be the amount derived from the
sale, and the verdict should be for the plaintiff, even though

the transfer secured a just debt. The sixth instruction stated that the defendant company was chargeable with notice and knowledge of every fact and circumstance that may have been brought home to Thomas Blyth, its manager, or to any agent of the company acting within the scope of his authority, and that if said manager, or any other person acting for the company in the matter of the transfer, knew or had reasonable cause to believe that a preference was intended, that would be the same as if the company knew or had reasonable notice of such preference.

The seventh, eighth and tenth instructions given at plaintiff's request were excepted to, and will be stated when we reach their consideration. At the request of the defendants, instructions were given to the effect that before the plaintiff can recover he must prove by a preponderance of the evidence that J. R. Gourley & Co. was insolvent on June 17, 1903; that the results of the transaction complained of were to give the Blyth & Fargo Co. a greater percentage of its claim than any other creditor of the same class; that said company had at the date of the mortgage reasonable cause to believe that a preference was intended; that the petition in bankruptcy was filed within four months after the giving of the mortgage. And the jury was further instructed in substance that if it should be found that the company, before taking the mortgage, took the proper steps to ascertain the financial condition of J. R. Gourley & Co., and pursued in good faith all reasonable means to that end, and, as a result of such investigation, had no reasonable cause to believe that said debtor was insolvent, then the verdict should be for the defendant.

The provisions of the Bankrupt Act relating specially to preferred creditors are found in section 60. Subdivision (a) of that section provides:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or

made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Subdivision (b) of the same section provides: "If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. And, for the purpose of such recovery, any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

The Act defines insolvency as follows: "A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

The Supreme Court of the United States has said, with reference to the above quoted provisions of section 60, that subdivision (a) defines what shall constitute a preference, and subdivision (b) states a consequence of it. "The former defines it to be a transfer of property which will enable him to whom the transfer is made to obtain a greater percentage of his debt than other creditors. The latter provides a consequence to be that the transfer may be avoided by the trustee and the property or its value recovered; provided, however, that the preference was given four months before the filing of the petition in bankruptcy or before the adjudication, and the creditor had reason to believe a preference was intended." (Pirie v. Chicago T. & T. Co., 182 U. S. 438.)

To constitute a preference a mere intent to prefer is not alone sufficient. The act complained of must have amounted in fact to a preference as defined in the Bankrupt Act, the test being whether it occurred when the debtor was insolvent and within the four months period, and the effect of its enforcement is to give any creditor a greater percentage of his debt than any other creditor of the same class. Indeed, it does not seem essential that there shall have been actually present in the mind of the debtor an intent to prefer to constitute a preference in fact as defined in subdivision (a) of section 60. To make the preference voidable, however, by the trustee and authorize him to recover the property or its value, it must appear not only that a preference was given, within the meaning of subdivision (a), but also that the creditor had reasonable cause to believe that a preference was intended by the act complained of. The intent of the debtor becomes, therefore, material in such a suit, for the requirement of showing the creditor to have had reasonable cause to believe that a preference was intended pre-supposes the existence of such an intent. It is true that in such case, as in others where intent is material, it may be inferred from the nature and effect of the debtor's act, under the rule that a party is supposed to have intended the natural and obvious consequences of his act; and there are cases which we understand as holding that the intent to prefer will be conclusively presumed from the effect of a transaction giving one creditor a greater percentage of his debt than any other creditor of like class. (See Brandenburg on Bankruptcy (3rd Ed.), sec. 956.) Some of the cases of that class are where the transfer was made by a debtor clearly insolvent, in compliance with the insistent demands of a creditor, but without any intent to prefer shown to have been actually in his mind, other than that to be found in the purpose and effect of the transaction. In other well reasoned cases the existence at the time of an intent to prefer is held necessary to procure the avoidance of the transfer as a preference. (Hardy

v. Gray, 16 Am. B. Rep., 386; In re Bank, 18 id., 766; In re Smoke, 4 id., 434.)

In Hardy v. Gray, *supra,* it was said that while the rule that a person who does an act is supposed to contemplate what results therefrom applies to this class of cases, it is only an element to be considered; and it was held necessary to show an actual intent of the debtor to give a preference. In the case of In re Bank, *supra,* the court stated that it agreed with the holding in Hardy v. Gray, that the debtor must himself have intended the preference. It is said in the opinion, following that statement:

"The very word signifies the doing of a thing with a purpose to give an advantage; and the construction which treats the motive of the debtor as indifferent seems artificial and awkward. But it is enough to say that a belief that a debtor is insolvent is a very different thing from the belief that he intends a preference. For it would often, and probably, generally, happen that a person though in fact insolvent would, while continuing his business in the usual way, make payments without a thought of disparagement of other creditors and with confidence in his ability to pay them all. And upon like considerations the creditor may share in the confidence of his debtor, and may well suppose that the debtor while paying him his debt in the common course of business is acting without any purpose of giving special favor. Such consideratiations have often been adverted to by the courts as the basis of decision and were the principle motive for the amendment of 1903."

The distinction between a preference and a mere intent to prefer is observed in the fourth and fifth instructions given at the plaintiff's request and those given at the request of defendants, in connection with the instructions defining a preference and insolvency. But there appears to be at least a technical inconsistency between them and plaintiff's first instruction. The latter makes it incumbent upon the plaintiff to prove in this respect merely that the transfer was made by the bankrupt with the intention of giving a

(7)

preference. That instruction was not excepted to. But an exception was taken to the tenth instruction, and it is here objected to on the ground that it makes the validity of the transfer dependent upon an intent to prefer instead of a preference in fact. That instruction reads as follows:

"The court instructs the jury that if the transfer was made by the bankrupt to the defendants with the intention to create a preference in their favor or in favor of either of them, and that said defendants or either of them, at the time thereof, knew of such intent on the part of the bankrupt to so prefer the said defendants or either of them, or if the said defendants or either of them knew of such facts or circumstances as would have put a man of ordinary prudence upon inquiry and which by the use of ordinary diligence on the part of said defendants or either of them would have led to knowledge or belief on their part or on the part of either of them, that such was the intention of the bankrupt, in transferring his goods to them, or either of them, then such transfer as between the plaintiff and defendants or either of them is fraudulent and void."

We do not think that the court intended by this instruction to eliminate the question either of insolvency or a preference in fact. It was probably intended by giving it to state the effect of knowledge of suspicious facts on the creditor's part, and the result in this suit of a prohibited preference. Nevertheless, it seems to declare the transfer invalidated if made alone with the intent to create a preference; and in connection with the first instruction which, in stating the proof required on the part of the plaintiff, gave prominence to the intent rather than the fact of preference, it tended to confuse and mislead the jury. Indeed, in view of the evidence as to insolvency at the time of the transfer we think it quite probable that the jury was misled into the belief that, irrespective of insolvency, an intent to prefer, with knowledge of such intent on the part of either defendant, authorized a recovery by plaintiff; and that the insolvency of the debtor was a secondary consideration, and chiefly material in determin-

ing the existence of an intent to prefer. If that be true,
then the instruction was not only technically erroneous but
prejudicial as well.

This tenth instruction is further objected to on the ground
that it declared the transfer upon the condition stated to
be fraudulent and void, and it is argued that there is no
evidence of actual fraud, and that as a preference it might
be voidable but was not void. While that is true, we do
not think the use of the words objected to could be held
to have been prejudicial. If the transfer amounted to a
preference it would be constructively fraudulent as a vio-
lation of the Bankrupt Act, and hence voidable at the suit
of the trustee. This was a suit by the trustee seeking to
avoid it, and though not void in the extreme sense, its
effect in the suit would be the same, and it is not perceived
that the terms employed would lead to a different verdict
than if the effect had been described with technical exact-
ness.

The seventh and eighth instructions are objected to on
the ground that they pre-suppose the fact of insolvency
to have been established. Each of these instructions was
confined to the statement of a rule for determining whether
the defendants had reasonable cause to believe that a pref-
erence was intended. Neither charged that upon finding
such reasonable cause to have existed a verdict should
be returned for the plaintiff, nor did either one assume to
state all the elements necessary to establish plaintiff's case.
There is no contention that the rule stated is erroneous,
viz: that if it be found that the defendants or either of
them knew of such circumstances as would ordinarily pro-
duce a belief in the mind of a careful and prudent man
that a preference was intended by the transfer, then the
jury would be justified in finding that the defendants had
reasonable cause to believe that a preference was intended..
The instructions seem to follow substantially the rule gen-
erally laid down and approved by the authorities. In Brand-
enburg on Bankruptcy, (3rd Ed.) sec. 963, it is said, that
the creditor has reasonable cause to believe a preference

to have been intended, "if the facts and circumstances are brought home to him, such as would `put an ordinarily prudent man upon inquiry, for he is charged with knowledge of the facts which such inquiry should reasonably be expected to disclose; or if he has knowledge of facts and circumstances which would cause a reasonably prudent man to so believe." The instructions are not, in our opinion, objectionable, unless upon the further ground urged against them that the question of reasonable cause of. belief should not have been submitted to the jury for the reason that upon the evidence the debtor was solvent and a preference was therefore not established. The evidence as to insolvency will be separately considered.

The testimony of both John R. Gourley and Eleanor Gourley, the bankrupts, was taken by deposition out of the State and offered in evidence by the plaintiff. The defendants. objected to certain questions and answers contained in the depositions, and all the objections were overruled. It is here contended that the rulings upon the various objections were erroneous and prejudicial.

John R. Gourley having testified that he was in the business out of which the transaction in controversy arose about five months, and had been thrown into bankruptcy in August, 1903, was asked if he recalled who his creditors were, and following that whether he was indebted to certain individuals and firms in specified amounts, the form of the question being: "State whether or not, as nearly as you can remember, you were indebted to the following named parties, and the amounts which I shall read after each name. You may signify by answering yes or no, to the best of your recollection." No date of such indebtedness was stated in any question or answer, except as to the debt due the Blyth & Fargo Co., which was the last one mentioned, the witness having assented to or denied the existence of each debt as the same was stated.

This part of the deposition, except as to the debt due the defendant, was objected to on the ground that it failed to state the date of the indebtedness. It is now urged

that it was irrelevant and immaterial for the reason that evidence of indebtedness not existing at the time of the alleged preference was inadmissible.    Conceding that to be true where the evidence offered shows a debt at a different time, here the court would have been required to decide for itself, in excluding the evidence, that Gourley's testimony was totally insufficient to show or as tending to show that he owed the debts he assented to at the date of the preference.    The objection was not tendered when the deposition was taken, but according to stipulation permitting it, all objections were made upon the trial.    Had the witness been examined in open court, and a similar objection made, plaintiff's counsel might voluntarily have added the date to the question, or been required to confine his examination to a certain date.    Under the circumstances here, upon the objection to the testimony, the question was not whether the testimony was sufficient without more to show when the debts were owing, but whether it tended to show that they existed at the date material to the controversy.    In addition to the fact that he had been in business only five months, and had been thrown into bankruptcy early in August, Gourley testified in another part of his deposition that he continued in business but four days after the mortgage was given, and that the mortgagee took possession July 3, that he owed, according to his books, when the mortgage was given, something over $2,200, which agreed substantially with the amount of debts mentioned in the questions and answers objected to, and there were other references in his testimony to some of the debts mentioned, at least tending to show that they were in existence when the transaction of the mortgage occurred.    The privilege of cross-examination was open to counsel for defendants, who, it appears, was present when the deposition was taken, and he might have inquired definitely about the date. It is to be further observed that the objection was not that the testimony fixed or stated a date for the indebtedness different from the date of the alleged preference, but that it insufficiently showed that it existed at the latter

date.  We think the evidence was admissible.  Its sufficiency was a question for the jury.

The objection that the witness above referred to · was improperly permitted to answer the question whether he had money enough to pay his bills when the mortgage was given is, we think, well taken.  The question was, "And you knew at the time, did you not, that you hadn't money enough to pay your bills?"  The witness answered in the affirmative.  This clearly tended to confuse the jury in determining the fact of insolvency, which tendency was not lessened but increased by the next succeeding question, "And that you were insolvent?" also answered in the affirmative.  The debtor might not have had sufficient money at the time to pay all that he owed, and yet not have been insolvent, as that term is defined in the Bankrupt Act.  As will be seen when we come to consider the evidence relating specially to that subject, the difference between the aggregate value of the debtor's property and the amount of his debts was not great; and if the disagreement of counsel on this appeal concerning the effect of the evidence in that particular may be taken as an indication of the position taken by the respective parties in finally submitting the case, the jury had to consider conflicting interpretations of such evidence.

We do not think it was error, however, to admit the testimony given by each Mr. and Mrs. Gourley that they knew they were insolvent when the mortgage was given.  The plaintiff expected, or at least was attempting, to prove insolvency, and the debtor's knowledge was relevant upon the question of intent in making the transfer as one of the elements entering into the required proof of reasonable cause for the creditor's belief that a preference was intended.  The testimony that the debtors knew or believed themselves to be insolvent would not, of course, establish insolvency in fact, and would be of little consequence. as proof of such fact as against definite evidence of assets and liabilities showing solvency.  Indeed, it may be conceded that it would be inadmissible to prove the fact of

insolvency where such fact is disputed, and in a case like this, where it is admitted for a limited purpose, it would seem proper by an instruction to restrict its effect before the jury to the purpose for which it was material.

The objection to that part of Mr. Gourley's deposition testifying that at the time the mortgage on the goods was given another mortgage covering the store building was given to the same party to secure the same debt is not tenable. The latter mortgage was not in controversy, it is true, but the fact was relevant as one of the circumstances tending to show the knowledge or belief of the defendants concerning the purpose or intent of the transfer complained of.

The testimony of Mrs. Gourley that she had conversations with her husband (J. R. Gourley) regarding the financial condition of the concern, from which she was forced to the conclusion that they were insolvent, and her further testimony that she told her husband that they had more debts than they could pay, was improperly admitted, and the objection of defendants to the same ought to have been sustained. This testimony went beyond a mere admission that she knew or believed herself or the concern to be insolvent, as bearing on the question of intent. The obvious purpose of the testimony was to show the fact of insolvency. The part with reference to her conclusion from conversations had with her husband is a mere expression of opinion that they were insolvent, based upon what he told her, and was clearly incompetent and prejudicial.

The defendants attempted to show a present consideration for the mortgage on the theory that because of the falsity of the alleged representation that the debtor was doing a cash business only, which is claimed to have induced the credit, the sale of the goods for which the debt had been incurred was rescinded, and a new agreement made whereby the debtor was permitted to retain the goods upon giving the notes and mortgage. By two requested instructions the defendants sought to have the question submitted to the jury, but the court refused to give them,

and that is assigned as error. Without rehearsing the evidence on the point it is sufficient to say that it merely shows, if anything, that the representatives of the Blyth and Fargo Company, who acted in taking the mortgage, informed the debtor that they ·had come for the money on the account, and threatened that if the same was not settled or secured, they would take the goods by some legal proceeding. It does not appear that the goods previously sold and delivered were taken back, or that any attempt was made to do so, or to separate them from the other goods in stock, or even to ascertain whether any of the goods represented by the account were then on hand. But after the threat aforesaid the debtor went over his affairs with the agents of the creditor, and finally agreed to give the notes and mortgage; and one of the witnesses, the creditor's attorney, testified that the notes and mortgage were agreed to be given, "if we would let the sale go on." There is a conflict in the evidence as to the threat that was made. But considering alone the testimony on behalf of defendants, there is nothing to show an absolute disaffirmance of the sale, or such notice to the debtor as would give him to understand that it had been rescinded. The creditor does not seem to have parted with anything at the time of the mortgage, in return therefor. Instead of a new sale or new agreement making a new debt upon a present consideration, the transaction appears to us to have been an affirmance of the sale, if anything in that connection, and the taking of notes and security for the debt thereby previously existing. If it be assumed therefore that the manner in which the credit is asserted to have been obtained furnished a legal ground for rescission, and that having occurred the transfer might be held to have been made upon a present consideration sufficient to take it out of the provisions of the Bankrupt Act describing a voidable preference, the evidence falls so far short of showing a rescission and the creation of a new debt, that on that ground alone, if for no other, the requested instructions were properly refused.

There remains to be considered the evidence on the question of insolvency. Though there is practically no conflict in the evidence respecting the property owned at the time of the mortgage and its value and the amount of the liabilities, counsel differ as to its effect. This difference occurs mainly with reference to the disposition to be made, in listing the assets and liabilities, of certain notes and accounts which were used by the bankrupt after giving the mortgage to pay certain creditors. Practically all the evidence showing the property and debts is to be found in the testimony of Mr. Gourley. Nothing of the kind appears in the testimony of Mrs. Gourley. The trustee disclaimed any personal knowledge of either debts or property, and testified exclusively from the information disclosed by the books and papers which came into his possession after his appointment. He testified that according to the books and papers the debts appeared to be $1,672.79, exclusive of the debt of the Blyth and Fargo Company. He also said that there were other known debts not shown on the books, but they were not explained either as to character or amount. What the entries upon the books showed, if anything, as to when the debts were incurred or existed was not stated. Indeed, with a single exception, no particular entry was mentioned, that exception being an entry of an invoice of goods amounting to $36, entered in the books as of June 30, 1903, a date subsequent to the mortgage, which amount, or at least a like amount in favor of the same party, is included in the testimony of Mr. Gourley as one of his debts. No proof was offered or explanation made of the nature or reliability of the "papers" referred to. The books were not offered in evidence, nor any proof made as to their character or correctness, by whom or in what manner they were kept, or when the various entries were made, with the single exception above noted. It does not even appear that the books were in court for inspection. The trustee, in his testimony, does not name any creditor other than the Blyth and Fargo Co., and the one mentioned in the entry of June 30, aforesaid, nor with those two exceptions

does he state the amount shown to be due any creditor. The trial occurred in April, 1905, twenty months after the commencement of the bankruptcy proceedings, and seventeen months after the meeting of the creditors, at which the plaintiff was selected as trustee, and the deposition of Mr. Gourley had been taken in February preceding the trial. It would seem, therefore, that the trustee and his counsel must have had fairly accurate information concerning the debts, and that had the existing debts exceeded the amount testified to by Mr. Gourley it would have been an easy matter to establish the fact by competent evidence. No proof of any kind having been presented attesting the probable correctness or reliability of the trustee's information, except so far as it is corroborated as to amount by Gourley's testimony, it is not entitled to much, if any, weight in determining the important question of insolvency. As to the property, he testified that he had not been able to find any assets, though he admitted that there was a building and lot in the place where the bankrupt's business had been conducted, but stated, without any explanation thereof, that he had not taken possession of it. He did not pretend to know what property the bankrupt had at the date of the transfer complained of.

We have referred to the contention of plaintiff in error that Gourley's testimony fails to show, with one exception, when the debts testified to by him were incurred or whether they existed at the date of the mortgage, and we have held that the sufficiency of the evidence in that respect was a question for the jury. It will be assumed for the purpose of this decision that all the debts mentioned by Gourley existed when the transfer alleged to have constituted a preference was made. Coming then to his testimony we find that after a few preliminary questions, the attention of the witness was called to his indebtedness by questions in form substantially as follows: "State whether or not you were indebted to" &c., the question being completed by naming a supposed creditor and the supposed amount of his claim. Most of the debts thus mentioned were as-

sented to by the witness, some of his answers, however, being qualified as to the amount of the debt by the statement "as near as I can remember." The debts so mentioned and admitted amount in the aggregate to $2,215.35. The property of the debtor, owned at the date of the mortgage, is shown by his testimony to have been as follows: A stock of goods valued by him, according to shipping invoices, at $1,600; a team, wagon and harness worth $100; a store building worth $500; notes and accounts, most of which were used in paying debts subsequent to the date of mortgage, about $675. Since counsel differ as to the consideration to be given these notes and accounts and the use made of them, the situation cannot be better stated than by relating the testimony concerning them. The existence of the notes and accounts was brought out upon cross-examination by the following testimony:

Q. What did you do with your store accounts?

A. I turned most of them on my bills, so far as they would go. I paid up the Utah Implement Co., and I paid another small debt or two.

Q. What did you do with the notes that you held?

A. The Utah Implement Co. got part of them and Charley Larsen got some few of them.

Q. What did they amount to?

A. Three hundred and some dollars.

Q. Did you not have $700 worth of notes?

A. At the time Mr. Blyth was there I had about $600 worth of notes prepared to pay, or get signed. I had about $300 worth of notes signed.

Q. And how much book accounts did you have besides?

A. There was.$75 on the books.

Q. Were those $600 worth of notes all signed afterwards?

A. No, sir.

Q. Were any more signed?

A. No.

Q. What did you do with those accounts?

A. They went to pay up the creditors; I collected some

and turned in to Scocroft and Son the day before Mr. Tanner came down; I turned over to John Scocroft & Son's sale agent $150, and I returned $81 worth of chewing tobacco, which was ordered May 1st.

Q.  What did you do with the $300 worth of notes that you had signed up?

A.  I turned some of them to the Utah Implement Co., I forget just how much it was, and some to Charley Larsen. It took all the notes that were signed.

On re-direct examination:

Q.  Do you recall how much you paid Mr. Larsen?

A.  No, I can't just exactly.  Something over $100.

Q.  Do you owe Mr. Larsen anything now?

A.  No, sir; paid him up in full.

The reference in one of the above answers to the time when Mr. Tanner came down is to an occasion shortly after the mortgage was given, when Mr. Tanner, an attorney representing Scocroft & Son, came to the bankrupt's place of business and took possession of the store for a time, in the interest of that creditor, and upon his departure carried with him some of the perishable merchandise.

When the mortgage in question was given, the Blyth and Fargo Co. was represented by Thomas Blyth, its president and manager, and Mr. Spaulding, an attorney.  It appears that they had gone from Evanston, where the company was engaged in business, to Fort Bridger, the place of residence and business of the debtor, to see about collecting or securing the account.  Mr. Spaulding testified that Mr. Gourley, in going over his affairs with them immediately prior to giving the mortgage, showed them a bunch of notes and stated that they were about $700 worth, that they were the balances shown by his books and that he was having them put into the shape of notes for convenience in handling.  Mr. Blyth testified in relation to this matter that Mr. Gourley said he had been crediting a number of sheepmen and others who would have money very soon and that he had taken their notes, that he had about $700 made out but not all signed, and he was going out the next day

to get the balance signed; and that he thought he would
be in Evanston the following Monday and negotiate the
notes at the bank "and settle our account."

It is clear from this evidence, and indeed from Mr. Gour-
ley's own testimony, that he had prepared from the store
accounts against various parties notes to be signed amount-
ing to at least $600, that a part of the notes representing
at least $300 had been signed at the time the mortgage
was given, and that besides the $600 there were accounts
remaining on the books to the amount of $75. There is
no evidence that any of the notes or accounts were bad
or uncollectable. On the contrary, a considerable portion
of the amount seems to have been collected and used in
paying creditors. Gourley states explicitly that he collected
some of the accounts and turned over $150 to Scocroft
& Son, clearly referring to the $300 of unsigned notes
as accounts, since he had immediately before that testi-
fied to only $75 of accounts besides those represented
by the signed and unsigned notes, and the signed notes he
stated to have been used in paying two creditors, viz: Lar-
sen and the Utah Implement Company. We observe no
reason, therefore, for omitting, as counsel for the trustee
do in their brief, the notes and accounts from the list of
the debtor's property at the date of the mortgage. The
amount thereof should be included in estimating the value
of the property.

The aggregate value of the property, according to Mr.
Gourley's testimony, is shown, therefore, to have been:
Stock, $1,600; store building, $500; team, wagon and har-
ness, $100; notes and accounts, $675; total, $2,875. But
the jury found the value of the stock to have been $1,500,
which agrees with the rough estimate placed upon it by
Mr. Blyth and Mr. Spaulding, as they testified, when they
inspected it preliminary to taking the mortgage. Taking
the jury's valuation, the value of the property was $2,775.

The debts amoutning to $2,215.35 which had been called
to the attention of Mr. Gourley in the earlier part of his
testimony, and which he had admitted, did not include the

debt of the Utah Implement Company or Mr. Larsen, to whom were paid the signed notes, amounting to at least $300. Assuming the debts due those parties to have been incurred prior to the mortgage, the amount thereof, at least $300, and there is no evidence of any balance above that, should be included in the list of debts, bringing the amount to $2,515.35.

The debt of Scocroft & Son was included in the first list, and the amount thereof was stated or admitted to have been $727.48. Whether that was the amount before or after the payment of $150 and the return of tobacco worth $81 is not definitely shown, since the date when the debts mentioned in the first list existed in the amounts respectively stated is left uncertain, or at least is not specifically explained. If the amount of the debt due Scocroft & Son remained at the amount above mentioned after the credits aforesaid, then the sum of such credits, viz: $231, would have to be added to the list of debts, and they would then amount to $2,746.35, a sum not quite equal to the aggregate value of the property. Upon the evidence, however, it is as reasonable to suppose that the Scocroft debt was stated at its full amount as it existed before the credits, for it seems proper to assume that plaintiff's counsel, recognizing the burden devolving upon them, intended by the examination of Mr. Gourley to show the debts at the time of the alleged preference. In that view the total amount of the debts to be considered in determining whether the debtor was or was not insolvent at the time of the alleged preference would not exceed $2,515.35, as against property the aggregate value of which was at least, $2.775. Whether the Scocroft debt be increased by the amount of the credits or not, the value of the property exceeds the debts. It follows, therefore, that within the provisions of the Bankrupt Act, applying the definition of insolvency found in the Act, the debtor was not insolvent when the transfer was made, and hence it would not constitute a voidable preference.

It will be observed, as above stated, that there is practically no conflict in the evidence upon this subject. The result to be drawn from it is so apparent that it is difficult to understand the reason for the verdict of the jury, except upon the theory that they were confused or misled by the instructions, particularly the tenth, seeming to state that the only fact necessary to constitute the transfer a preference would be an intent on the part of the debtor to create a preference, regardless of the question of actual insolvency. It is unnecessary to consider the question as to reasonable cause for belief on the part of defendants below that a preference was intended. A motion for new trial was timely filed, stating as grounds thereof the errors here considered, including the ground that the verdict is not sustained by sufficient evidence and is contrary to law, and an exception was preserved to the order overruling it. It was error to overrule it, and as a result of the errors above pointed out the judgment must be reversed.

Counsel for plaintiffs in error, defendants below, ask for final judgment in this court in their favor. In our opinion the case ought not to be so disposed of. An order will be entered reversing the judgment and remanding the case for new trial.

Scott, J., concurs.

Beard, J., did not participate in the decision.